IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:19-CV-27-BO

| | | |
|---|---|---|
| CURRITUCK COUNTY, NORTH CAROLINA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| ELIZABETH E. LETENDRE, | ) ) | |
| Defendant. | ) | |

This cause comes before the Court on defendant's motion for preliminary injunction and the parties' cross-motions for partial summary judgment. Also pending is a motion by Marie and Michael Long to intervene for a limited purpose as well as defendant's motion to quash subpoenas. The appropriate responses and replies have been filed, or the time for doing so has expired, and a hearing was held before the undersigned on October 8, 2020, at Greenville, North Carolina. In this posture, the motions are ripe for ruling and, for the reasons that follow, the motion to intervene is granted, defendant's motion for partial summary judgment is granted, plaintiff's motion for partial summary judgment is denied, defendant's motion for preliminary injunction is denied as moot, and defendant's motion to quash is denied as moot.

BACKGROUND

This case arises out of a dispute over a building project constructed on a 3.67-acre lot at 1441 Ocean Pearl Road in Currituck County, North Carolina. Defendant, LeTendre, who owns the 1441 Ocean Pearl Road lot, has constructed an approximately fifteen thousand square-foot home on the property. The proposed intervenors, Marie and Michael Long, are LeTendre's neighbors.

The history and details of the dispute have been recounted in this Court's order entered February 12, 2020, which the Court incorporates by reference as if fully set forth herein.

The material facts are not seriously in dispute, and the following facts are comprised primarily of the undisputed material facts relied upon by LeTendre in her motion for partial summary judgment,[1] as well as other undisputed facts in record and the orders of the North Carolina Court of Appeals. LeTendre's Ocean Pearl Road lot has a Single Family Residential Outer Banks Remote zoning classification assigned by Currituck County. Developments which are permitted in this type of zoning district include single-family detached dwellings as that term is defined by Currituck County's Unified Development Ordinance (UDO). Plaintiff, Currituck County, approved LeTendre's plans to build a large home comprised of a three story main building and two, two-story side buildings, finding that the project satisfied the UDO's definition of a single-family detached dwelling. The Longs appealed the approval of LeTendre's plans, and in 2016 the North Carolina Court of Appeals held that LeTendre's project did not meet the UDO's definition of a single-family detached dwelling. *Long v. Currituck Cty.*, 248 N.C. App. 55 (2016). Specifically, the *Long* court determined that LeTendre's plans called for construction of three buildings, none of which were subordinate in use, and therefore conflicted with the UDO's single-family detached dwelling definition which applies to "a building." *Id.* at 64.

In 2015, the North Carolina Building Code Council (Building Code Council) reviewed LeTendre's plans to determine whether they complied with the definition of a "one family

---

[1] Currituck County did not file a Statement of Material Facts as required by Local Civil Rule 56.1, but responded to LeTendre's Statement of Material Facts by stating that it does not dispute LeTendre's proffered material facts or the exhibits she submitted in support of her motion for partial summary judgment. [DE 75]. Additionally, Currituck County proffered three additional facts which include recitations of the background and factual determinations made by this Court as well as the North Carolina Court of Appeals. *Id.* LeTendre filed no objection or opposition to this additional material.

2

dwelling" as that term is defined by the North Carolina Building Code (Building Code). The Building Code Council reviewed LeTendre's plans after she appealed a determination by the North Carolina Department of Insurance that her project's proposed occupancy more closely resembled a hotel, and that if it was to be used as a vacation rental it would need to be constructed in accordance with the North Carolina Building Code as opposed to the North Carolina Residential Building Code. [DE 70-1]; *see also Letendre v. Currituck Cty.*, 259 N.C. App. 512, 551 (2018). The Building Code Council reversed the Department of Insurance's decision and determined that LeTendre's project satisfied the definition of a "one family dwelling not more than three stories above grade plane in height with a separate means of egress, as required in NCRC section R101.2." [DE 70-1]. This decision was not appealed.

The North Carolina Court of Appeals considered the Building Code Council's decision in its 2018 opinion in *Letendre v. Currituck County*, but concluded that "the determination by the North Carolina Building Code Council does not in any way control [Currituck County's] application of its UDO." 259 N.C. App. at 552. On July 11, 2019, the governor of North Carolina signed into law Senate Bill 355, entitled "An Act to Clarify and Make Changes to the Land-Use Regulatory Laws of the State." S.L. 2019-111. Senate Bill 355 clarified the provisions of section 153A-346(b) of the North Carolina General Statutes by amending it to state as follows: "a county may not use a definition of building, dwelling, dwelling unit, bedroom, or sleeping unit that is inconsistent with any definition of the same in another statute or in a rule adopted by a State agency, including the State Building Code Council."

3

## DISCUSSION

I. Motion to intervene

The Longs have moved to intervene in this matter for the limited purpose of (1) contesting and opposing LeTendre's motion for preliminary injunction and (2) participating and supporting with Currituck County in filing, briefing, and arguing a motion for partial summary judgment as to LeTendre's counterclaim for a declaratory judgment that N.C. Gen. Stat. § 153A-346(b) compels Currituck County to consider her home a single-family detached dwelling. The Longs argue that they are entitled to intervene as of right pursuant to Fed. R. Civ. P. 24(a) and alternatively that they should be permitted to intervene pursuant to Fed. R. Civ. P. 24(b).

Currituck County supports the Longs' motion to intervene, and LeTendre does not oppose the Longs' intervention for the limited purpose of opposing LeTendre's motion for preliminary injunction. As discussed below, the motion for preliminary injunction is now moot in light of LeTendre's motion for partial summary judgment, and thus the Court construes the Longs' request as seeking to intervene for the purpose of supporting Currituck County's motion for partial summary judgment and opposing LeTendre's motion for partial summary judgment. The Court agrees that the Longs have an interest in this litigation and that their request to intervene for a limited purpose is appropriate. *See, e.g., Wolpe v. Poretsky*, 144 F.2d 505, 508 (D.C. Cir. 1944). The motion to intervene for a limited purpose is therefore granted.[2]

II. Cross-motions for summary judgment

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

---

[2] The Longs did not seek an opportunity to file any additional briefing in support of or opposition to the pending motions. The Court has considered the Longs' declaration attached to Currituck County's motion for partial summary judgment.

4

56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). When deciding cross-motions for summary judgment, a court considers each motion separately and resolves all factual disputes and competing inferences in the light most favorable to the opposing party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

As LeTendre argued at the hearing and as noted above, the material facts in this case are not in dispute and the issue before this Court is a legal one. Having considered the record and the parties' arguments, the Court determines that the North Carolina General Assembly's clarifying amendment to N.C. Gen. Stat. § 153A-346(b) has the effect of rendering LeTendre's project a single-family detached dwelling for purposes of Currituck County's UDO and LeTendre is entitled to a declaratory judgment of the same.

The North Carolina State Building Code (State Building Code) is divided into two classifications: the Residential Code for One-and-Two Family Dwellings (Residential Building Code) and the Building Code which applies to all other structures. *See* N.C. Gen. Stat. § 143-136.

> The North Carolina State Building Code, as adopted by the Building Code Council, may include reasonable and suitable classifications of buildings and structures, both as to use and occupancy; general building restrictions as to location, height, and floor areas; ... and such other reasonable rules pertaining to the construction of buildings and structures and the installation of particular facilities therein as may be found reasonably necessary for the protection of the occupants of the building or structure, its neighbors, and members of the public at large.

N.C. Gen. Stat. § 143-138. The Residential Building Code defines the term "dwelling" as "any building that contains one or two dwelling units used, intended, or designed to be built, used, rented, leased, let or hired out to be occupied, or that are occupied for living purposes." [DE 69-2]. The term "building" is defined by the Residential Building Code as "any one-and-two family dwelling or portion thereof, . . . that is used, or designed or intended to be used for human habitation, for living, sleeping, cooking, or eating purposes, or any combination thereof, and shall include accessory structures thereto." *Id.* A "dwelling unit" is defined as "A single unit providing complete independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking, and sanitation." *Id.*

North Carolina's General Assembly has given North Carolina counties the authority to enact zoning ordinances. *See Lanvale Properties, LLC v. Cty. of Cabarrus*, 366 N.C. 142, 151 (2012). A county's zoning power is not absolute, however, and its ordinances may regulate, among other things, the size, location, and use of buildings and structures insofar as the regulations promote public health, safety, and welfare. *Id.*; *see also Letendre*, 259 N.C. App. 512, 528 (citing N.C. Gen. Stat. § 153A-340(a) (2017)).

Currituck County's UDO defines "dwelling, single-family detached" as "A residential building containing not more than one dwelling unit to be occupied by one family, not physically

6

attached to any other principal structure." [DE 69-1]. The term "building" is defined by the UDO as a "structure"; a "structure" is defined by the UDO as "Anything constructed, installed, or portable, the use of which requires a location on a parcel of land. This includes a fixed or movable building which can be used for residential, business, commercial, agricultural, or office purposes, either temporarily or permanently." *Id.* A "dwelling unit" is defined as "One room or rooms connected together, constituting a separate, independent housekeeping establishment for owner or renter occupancy, and containing independent cooking and sleeping, and sanitary facilities." *Id.*

State law, through the General Assembly's passage of S.L. 2019-111 which is intended to clarify the land-use regulatory laws of the state, now provides that a county may not define a "dwelling" in a manner that is inconsistent with the definition in another State agency's statute or rules, including the Building Code Council. The Court agrees with LeTendre that the definitions of "dwelling" in both the Residential Building Code and Currituck County's UDO are circular, with both referring to the definition of a building, which then refers either to the definition of a structure or back to the definition of a dwelling. The Court further agrees with Currituck County that these definitions, while circular, are certainly not in conflict. But that does not end the inquiry.

The Building Code Council is required to provide technical interpretations of the State Building Code when requested. *See* N.C. Gen. Stat. § 143-141(b). An interpretation by the Building Code Council may be appealed to the state superior courts. *Id.* § 141-143(d). The Building Code Council provided such a technical interpretation on LeTendre's request in 2015. The Building Code Council held that LeTendre's project met the definition of a one family dwelling and that the Residential Building Code applied. Thus, any ambiguity that was caused by the definition of dwelling in the State Building Code was resolved by the Building Code Council's interpretation.

In order to determine whether the legislature's amendment has the effect of abrogating the opinions of the North Carolina Court of Appeals in *Long* and *LeTendre*, the Court must construe both the meaning and the effect of the amendment to N.C. Gen. Stat. § 153A-346(b). To do so, this Court looks to the rules of construction applied by the North Carolina Supreme Court, *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489 (4th Cir. 2007), which principally relies on discerning the intent of the legislature. *State v. Jones*, 359 N.C. 832, 835 (2005). "When interpreting a statute, [courts] ascertain the intent of the legislature, first by applying the statute's language and, if necessary, considering its legislative history and the circumstances of its enactment." *Shaw v. U.S. Airways, Inc.*, 362 N.C. 457, 460 (2008).

When an amendment is intended to clarify the meaning of a statute, it does not alter the original meaning, and thus it applies to all cases pending before a court when the amendment is enacted. *Ray v. N. Carolina Dep't of Transp.*, 366 N.C. 1, 9 (2012). If an amendment modifies the substantive meaning of the statute, the amendment applies only prospectively. *Id.* Whether an amendment to a statute is clarifying or changes its substantive meaning is a question of law. *Id.*

Here, the title of the amendment expressly states that it was intended to clarify and restate the existing law. *See Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 812 (explaining that even when the text of a statute is plain, "the title of an act should be considered in ascertaining the intent of the legislature"). The revision is further expressly made applicable to ordinances adopted before, on, or after the effective date of the amendment. A comparison of the original and amended statutes supports the conclusion that the 2019 amendment was intended by the legislature to clarify and not substantively alter the original statute. *Ferrell v. Dep't of Transp.*, 334 N.C. 650, 659 (1993). Indeed, Currituck County does not dispute that the relevant amendment

8

was clarifying and not altering. *See* [DE 55 at 6]. Currituck County does not argue that, even if the amendment is a clarifying amendment, it does not apply to this case.

As discussed above, the *LeTendre* court held in 2018 that the Building Code Council's decision did not control Currituck County's application of its UDO. But the impact of the Building Code Council's interpretation changed after the legislature passed S.L. 2019-111, which clarifies the state's land-use regulatory laws. The legislature made clear that when a state agency, and specifically the Building Code Council, defines a term such as dwelling or dwelling unit, a county zoning ordinance definition may not be inconsistent with that definition. Here, the Building Code Council resolved any ambiguity in the State Building Code definition of "dwelling" as it applies to this case when it decided that the LeTendre project consists of a one family dwelling.

Currituck County attempts to distinguish the classification of LeTendre's project as a one family dwelling under the Residential Building Code as distinct from the UDO's definition of a single-family *detached* dwelling. The Court, however, considers this a distinction without a difference. As Currituck County itself argues, its UDO definition of "dwelling" is generally consistent with the Residential Building Code's definition, as both apply to buildings or structures for living, sleeping, and sanitation. Both definitions also apply to "a" or "any building"; in other words, a single and not multiple buildings, and this was the issue in *Long* – whether the LeTendre project consists of one or three separate buildings. Thus, when the Building Code Council determined that the LeTendre project was a one family dwelling, it determined that the project consists of a or any building. Moreover, Bill Newns, the Chief Building Inspector for Currituck County, has testified that Currituck County adopted the Residential Building Code, that the LeTendre project complies with the 2012 version of the Residential Building Code, and that the projects consists of one building. [DE 46-1] Newns Dep. pg. 20.

9

LeTendre has proffered further evidence in support of this conclusion which is uncontroverted by Currituck County. Dan Tingen is a general contractor and was a member of the Building Code Council from 1999 to 2017, serving as its chair from 2003 to 2017. [DE 70] Tingen Decl. ¶¶ 2-3. Mr. Tingen states that the Building Code Council found as a fact that there was no evidence that the LeTendre project was anything other than a one family dwelling. *Id.* ¶ 7. Mr. Tingen further states "a home cannot meet the definition of a 'one family dwelling' under the Building Code while not meeting the definition of the same term under a local zoning ordinance." *Id.* ¶ 14.

This is consistent with this Court's conclusion that the legislature amended the relevant statute to clarify that where a project has been classified by the Building Code Council as satisfying the definition of a dwelling, in this case a one family dwelling, a local zoning ordinance may not be interpreted to result in an inconsistent classification. In other words, a building cannot be determined to be a one family dwelling under the Residential Building Code but not a one-or-single family dwelling under a local zoning ordinance.

For this reason, the Court determines that LeTendre is entitled to partial summary judgment in her favor on her counterclaim seeking a declaration that (1) her building project at 1441 Ocean Pearl Road in Currituck County satisfies the definition of a single-family detached dwelling under the Currituck County UDO; (2) Currituck County's current interpretation of what constitutes a single-family detached dwelling as applied to the LeTendre project is inconsistent with the State Building Code's definition of a dwelling; and, as a result, (3) Currituck County must rescind its Notice of Certificate of Compliance Revocation and reinstate its Certificate of Compliance because the project satisfies the definition of a single-family detached dwelling.

In light of the foregoing, Currituck County's motion for partial summary judgment in its favor on this same legal issue is denied.

III. Motion for preliminary injunction

Prior to seeking partial summary judgment, LeTendre filed a motion for preliminary injunction pursuant to Fed. R. Civ. P. 65. Because the relief that LeTendre sought in her motion for preliminary injunction has been granted, the motion for preliminary injunction is moot.

IV. Motion to quash

LeTendre filed a motion to quash several subpoenas issued by Currituck County. In response, Currituck County indicated that it had withdrawn the subpoenas for the production of documents upon Gregory Wills, John Cronin, Bernie Manusco, Rick House, Chris Nason, George Wood, and Chuck Lysaght that are the subject of the motion. [DE 73]. As the subpoenas have been withdrawn, the motion to quash is moot.

## CONCLUSION

Accordingly, for the foregoing reasons, the Longs' motion to intervene for a limited purpose [DE 51] is GRANTED, defendant's motion for partial summary judgment [DE 67] is GRANTED, plaintiff's motion for partial summary judgment [DE 54] is DENIED, defendant's motion for preliminary injunction [DE 43] is DENIED AS MOOT, and defendant's motion to quash [DE 60] is DENIED AS MOOT.

SO ORDERED, this _16_ day of November, 2020.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE

11